IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA

Roanoke Division

| | | |
|---|---|---|
| BRUCE A. ESTES, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 7:15cv00154 |
| HAROLD CLARKE, *et al.*, | ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Defendants Harold Clarke, Mark Engelke, H. Ponton, B. Wright, J. Morrison, and A. DeBord, by counsel and in support of their motion for summary judgment, submit the following:

**I.     Introduction**

The *pro se* Plaintiff Bruce A. Estes, #1185224, is an offender with the Virginia Department of Corrections ("VDOC") and is currently incarcerated at River North Correctional Center ("River North"). Estes has filed this action pursuant to 42 U.S.C. § 1983.

Estes alleges the following: Estes is a Jewish inmate who follows the Biblical dietary laws and the Laws of Kashrut (Kosher). These dietary laws require him to eat Kosher meals. VDOC does not provide Kosher meals. The Common Fare diet does not meet the definition of Kosher and is not Kosher. Estes is being denied religious meals required by his faith. This denial greatly hinders the practice of his faith because he is forced to eat foods that do not meet his religious needs. This denial creates an unnecessary burden on Estes and the practice of his faith. Estes has provided food service with a copy of the Kosher dietary laws in an attempt to resolve the issues, but food service continues to deny Estes a Kosher diet.

1

Estes asks this Court to direct VDOC to follow all laws of Kashrut in preparing meals for Jewish inmates, to provide Kosher meals for all three meals in the dining hall, and to instruct Keefe Commissary to make Kosher meals available or purchase on a regular basis for those who can afford them. Estes does not raise any specific constitutional claims in his Complaint. Therefore, Defendants construe the Complaint as claiming a violation of Estes' First Amendment right to free exercise of religion.

Defendants enclose and incorporate by reference as Exhibit I the affidavit of Mark Engelke, as Exhibit II the affidavit of Benjamin Wright, and as Exhibit III the affidavit of J. Morrison. Defendants respectfully request that this Court consider these affidavits as evidence in support of this Motion.

## II. Statement of Material Facts

1. Engelke is the Director of Food Services for VDOC. He has worked for VDOC for 28 years and began in Food Service in 1997. Engelke became the Director of Food Services for the VDOC in 2007. Ex. I ¶ 1.

2. Wright is the Warden at River North. Ex. II ¶ 1.

3. Morrison is the Food Operations Manager at River North. Ex. III ¶ 1.

4. The Common Fare diet was developed to meet the dietary needs of offenders who, for religious reasons, require a Kosher, Halal or non-pork diet and whose dietary requirements cannot be accommodated with foods provided by the Master Menu. Policies and procedures for Common Fare are set forth in VDOC Food Service Manual. Ex. I ¶ 4, Enclosure A.

5. Only authorized food items are served on the Common Fare menu. All foods purchased and used for Common Fare are consistent with or certified "Kosher" by a recognized

Orthodox Standard, such as "U," "K," or "CRC," or certified Halal. The VDOC Food Service Manual provides clear guidelines regarding food preparation and service of Common Fare food items. It addresses areas such as food preparation, serving trays and utensils, assignment to and removal from Common Fare and various special observances. Appropriate procedures are in place to ensure that food service workers, including offender kitchen workers, receive appropriate training and supervision in the proper handling of Common Fare food. Food Service Managers continually monitor the Common Fare food preparation area and workers to ensure that the Common Fare policy is being followed. All health and safety guidelines and personal hygiene rules are strictly enforced. Ex. I ¶ 5.

6. Engelke is familiar with the Kashrut dietary laws. The article attached to Estes' Complaint states: "If you buy your meat at a kosher butcher and buy only kosher certified products at the market, the only thing you need to think about is the separation of meat and dairy." The Common Fare menu does not mix meat and dairy. In fact, there is no meat offered on the Common Fare menu – only tuna. The article also states: "All fruits and vegetables are kosher…. However, bugs and worms that may be found in some fruits and vegetables are not kosher. Fruits and vegetables that are prone to this sort of thing should be inspected to ensure that they contain no bugs." Fruits and vegetables offered at VDOC facilities are routinely inspected for freshness and properly cleaned before serving. Ex. I ¶ 6.

7. The Common Fare menu is offered at selected VDOC facilities, including River North. Ex. II ¶ 4.

8. Estes is currently receiving the Common Fare Diet at River North. Ex. II ¶ 5.

9. Common Fare meals at River North are prepared in a designated room separate from the kitchen and are cooked in a designated cooking vessel. River North has a designated

oven in the main kitchen which is used for Common Fare meals only. Ex. III ¶ 4. The hot meals are prepared on designated hot plates, steamers or kettles in a designated area of the kitchen.[1] Ex. I ¶ 7.

10. Reusable food trays and covers designated for Common Fare meals are stored separately from items used for the regular menu. They are placed in a clean and sanitized dishwasher for washing and sanitizing before general population trays and utensils are washed. Ex. I ¶ 7.

11. Food Service staff at River North comply with the guidelines of the VDOC Food Service Manual. Ex. I ¶ 7.

12. Estes may also purchase and consume any food items from the commissary that are not clearly marked as containing pork or pork derivatives or containing a combination of meat and dairy ingredients. Kosher food items are marked as such. Ex. II ¶ 6, Enclosure A.

13. Estes may also participate in weekly religious services and has access to religious materials and property. He is allowed to participate in Passover and the Seder service. Appropriate food substitutions are made to both the Common Fare and Master menus during Passover. Ex. II ¶ 7.

## III. Argument

### A. Summary Judgment Standard

A motion for summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *See also Celotex Corp. v. Catrett*, 477 U.S.

---

[1] In April 2014, River North began a pilot program, offering a new Common Fare menu that includes hot meals. *See* Ex. III ¶ 5, Enclosure A.

4

317, 322-23 (1986). Yet, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "The party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Rivanna Trawlers Unlimited v. Thompson Trawlers, Inc.*, 840 F.2d 236, 240 (4th Cir. 1988). The court should view the evidence and reasonable inferences drawn there from in the light most favorable to the non-moving party. *See Anderson*, at 255. When, based on the evidence presented, a fair minded jury could not reasonably find for the plaintiff, summary judgment is appropriate. *See Anderson*, at 252; *EEOC v. Clay Printing Co.*, 955 F.2d 936, 942-43 (4th Cir. 1992).

### B. Estes Alleges No Personal Action By Defendants

As a threshold matter, Defendants should be dismissed because Estes does not allege that they took any personal action that allegedly violated his rights.

Liability under § 1983 requires personal action by a named defendant. To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1988). A plaintiff, further, must affirmatively allege that the named defendants were personally involved in the alleged violations of his constitutional rights. *See e.g.*, *Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1280 (4th Cir. 1995); *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985); *Barrow v. Bounds*, 498 F.2d 1397 (4th Cir. 1974).

Estes does not mention any of the Defendants by name in the portion of the Complaint containing his factual allegations. To the extent that Estes claims that Defendants are liable due to their supervisory positions in VDOC, such claim is not cognizable under § 1983. In a § 1983 action, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).[2] Thus, "because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Consequently, Defendants in their supervisory positions should be dismissed from this action because they cannot be liable under a theory of *respondeat superior*.

C.  **First Amendment Claim**

The Free Exercise Clause of the First Amendment extends to prison inmates. *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987); *Morrison v. Garraghty*, 239 F.3d 648, 656 (4th Cir. 2001). However, an inmate's constitutional rights must be evaluated within the context of his incarceration. The Supreme Court has long cautioned that "courts are ill equipped to deal with the increasingly urgent problems of prison administration[,]" *Procunier v. Martinez*, 416 U.S. 396, 405 (1974) (dictum), and thus, the court "must afford deference to the officials who run a prison, overseeing and coordinating its many aspects, including security, discipline, and general administration." *Lovelace v. Lee*, 472 F.3d 174, 199 (4th Cir. 2006).

---

[2] *See also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under § 1983); *Robertson v. Sichel*, 127 U.S. 507, 515-16 (1888) ("A public officer or agent is not responsible for the misfeasances or positive wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the sub-agents or servants or other persons properly employed by or under him, in the discharge of his official duties"); *Dunlop v. Munroe*, 11 U.S. 242 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties).

This deference is achieved by a rational basis test. The court is to consider four factors to determine if prison regulations are reasonably related to legitimate penological interests:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right … remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any 'obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns."

*Lovelace*, 472 F.3d at 200 (quoting *Turner v. Safley*, 482 U.S. 78, 89-92 (1987)). When applying these factors, the court must "respect the determinations of prison officials." *United States v. Stotts*, 925 F.2d 83, 86 (4th Cir. 1991). The plaintiff bears the ultimate burden of establishing that a prison regulation or decision is unconstitutional. *Hause v. Vaught*, 993 F.2d 1079, 1082 (4th Cir. 1993).

Estes alleges that his Jewish faith requires that he be provided a Kosher diet. Defendants' evidence clearly shows he is being provided this diet through the Common Fare. The Common Fare was developed to meet the dietary needs of offenders who, for religious reasons, require a Kosher, Halal or non-pork diet and whose dietary requirements cannot be accommodated with foods provided by the Master Menu. All foods purchased and used for Common Fare are consistent with or certified "Kosher" by a recognized Orthodox Standard, such as "U," "K," or "CRC." The Common Fare menu does not mix meat and dairy. In fact, there is no meat offered on the Common Fare menu – only tuna. Fruits and vegetables are routinely inspected for freshness and properly cleaned before serving. Estes enrolled in and receives the Common Fare at River North. At River North, Common Fare meals are prepared in a designated room separate from the kitchen. Common Fare meals are cooked in a designated cooking vessel. River North

has a designated oven in the main kitchen which is used for Common Fare meals only. The hot meals are prepared on designated hot plates, steamers or kettles in a designated area of the kitchen. Common Fare trays, covers, and utensils are washed and stored separately. Common Fare meals are Kosher and are prepared and served in accordance with the VDOC Food Service Manual. Furthermore, Estes may also purchase and consume any food items from the commissary that are not clearly marked as containing pork or pork derivatives or containing a combination of meat and dairy ingredients. Kosher food items are marked as such.

Estes is not being denied his First Amendment right to the free exercise of his religion. He is provided the Common Fare diet which meets Kosher standards. Also, Estes may participate in weekly religious services and has access to religious materials and property. Accordingly, Defendants request that the Court grant their motion for summary judgment on this claim.

WHEREFORE, for the reasons discussed above, Defendants Harold Clarke, Mark Engelke, H. Ponton, B. Wright, J. Morrison, and A. DeBord respectfully request that this Court grant their Motion for Summary Judgment.

Respectfully submitted,

HAROLD CLARKE, MARK ENGELKE,
H. PONTON, B. WRIGHT, J. MORRISON,
and A. DEBORD

By: s/ J. Michael Parsons
J. Michael Parsons, AAG II, VSB #68520
Office of the Attorney General
Criminal Justice and Public Safety Division
900 East Main Street
Richmond, Virginia 23219
Phone: (804) 786-0046
Fax: (804) 786-4239
jparsons@oag.state.va.us

**CERTIFICATE OF SERVICE**

I hereby certify that on the 7th day of August, 2015, I electronically filed the foregoing Memorandum in Support of Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following CM/ECF participants: N/A, and I hereby certify that I have mailed by United States Postal Service the documents to the following non-CM/ECF participants: *pro se* Plaintiff Bruce A. Estes, #1185224, River North Correctional Center, 329 Dellbrook Lane, Independence, Virginia 24348.

> s/ J. Michael Parsons
> J. Michael Parsons, AAG II, VSB #68520
> Office of the Attorney General
> Criminal Justice and Public Safety Division
> 900 East Main Street
> Richmond, Virginia 23219
> Phone: (804) 786-0046
> Fax: (804) 786-4239
> jparsons@oag.state.va.us